**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| CHRISTOPHER JARVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 2:17-cv-396-ECM-GMB |
| | ) | |
| TAYLORCHANDLER, LLC, | ) | |
| T. BRITT TAYLOR, | ) | |
| NORMAN CHANDLER, and | ) | |
| JAMES R. JOHNSON, | ) | |
| | ) | |
| Defendants. | ) | |

---

**DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S EXPERT DISCLOSURE AND
EXCLUDE PLAINTIFF'S EXPERT WITNESSES
AND BRIEF IN SUPPORT THEREOF**

---

COME NOW Defendants, TaylorChandler, LLC, T. Britt Taylor, Norman Chandler, and

James R. Johnson (collectively, "Defendants"), and on the grounds set forth herein, hereby move

the Court to strike Plaintiff's Expert Disclosure and exclude Plaintiff's expert witnesses. In support

thereof, Plaintiffs state as follows:

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S EXPERT
DISCLOSURE AND EXCLUDE PLAINTIFF'S EXPERT WITNESSES**

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

**A.    Underlying Claims and Factual Allegations**

This case arises from the acquisition of Jade Risk, LLC ("Jade Risk") by Defendants in

late 2016 from Lawrence L. Anderson and Plaintiff Christopher Jarvis ("Jarvis") (referred to

hereinafter as the "Acquisition") and the subsequent employment of Jarvis by Defendant

TaylorChandler, LLC ("TaylorChandler"). Defendants acquired Jade Risk to expand the reach of the captive management services provided by Arsenal Insurance Management, LLC ("Arsenal"), which is also owned by Defendants.

The parties entered into a Membership Interest Purchase Agreement (the "Purchase Agreement"), which set forth the terms of the Acquisition and is governed by Alabama law. The total purchase price was $3,000,000, but $750,000 of the purchase price was in the form of a promissory note issued to Jarvis and payable only upon Jade Risk obtaining certain revenue benchmarks in 2016 and 2017. If Jade Risk failed to reach the revenue benchmarks for 2016 and/or 2017, there would be a 2016 Revenue Shortfall and 2017 Revenue Shortfall, respectively. Jarvis also entered into an employment agreement (the "Employment Agreement") and a restrictive covenants agreement (the "Restrictive Covenants Agreement") which together set forth Jarvis' compensation and duties to TaylorChandler and prohibited Jarvis from engaging in certain activities in competition with TaylorChandler and Jade Risk. Collectively, the Purchase Agreement, Employment Agreement, and Restrictive Covenants Agreement (the "Agreements") set forth what business activities Jarvis could and could not do.

As argued by Defendants, Jade Risk did not meet the revenue benchmarks for 2016 or 2017, resulting in both a 2016 Revenue Shortfall and a 2017 Revenue Shortfall, as defined in the Purchase Agreement and Employment Agreement. Therefore, Jarvis did not receive all of the $750,000 subject to the promissory note, which was offset by the amount of the Revenue Shortfalls. Defendants also discovered that numerous captive clients that were represented by Plaintiff to be clients of Jade Risk were either fabricated, shut down, or were to be shut down by the end of 2016. Defendants also discovered that Jarvis had been marketing and soliciting clients for "JarvisTower," which he used to promote his life insurance practice; steering current and

former clients away from Jade Risk; and diverting commissions from former Jade Risk clients. Defendants terminated Jarvis for cause based on the foregoing conduct.

Jarvis brought the instant lawsuit on the basis of amounts allegedly owed from Defendants under the Promissory Note and the Agreements. Defendants counterclaimed on the basis that Jarvis committed fraud with respect to his representations of expected Jade Risk clients and revenues and had breached the Agreements.

### B.    Plaintiff's Expert Disclosures

The Court's Scheduling Order in this matter mandates that "[t]he parties shall disclose to each other the identity of ANY person who may be used at trial to present evidence under Rules 701, 702, 703, or 705 of the Federal Rules of Evidence, and provide the reports of retained experts or witnesses whose duties as an employee of the party regularly involved giving expert testimony, required by Rule 26(a)(2) of the Federal Rules of Civil Procedure . . . ." (**Doc. 53 at § 6**). Further, the Court's Amended Scheduling Order sets the deadline for Plaintiff to submit Expert Witness Disclosures as February 5, 2019. (*Id*.)

Plaintiff served his Expert Disclosure, identifying Chris Jarvis and Gary Bowers as expert witnesses, on February 5, 2019. (Attached hereto as **Exhibit A**). Mr. Jarvis, the Plaintiff in this matter, is disclosed as a non-retained expert. Attached as an exhibit to the Expert Disclosure was Mr. Bower's expert report, his curriculum vitae, and a list of materials he considered in connection with his analysis.

As set out fully herein, Plaintiff failed to comply with the Expert Disclosure requirements of Rule 26(a)(2) of the *Federal Rules of Civil Procedure.* Further, the designations of Mr. Jarvis and Mr. Bowers as expert witnesses is improper and does not meet the standard articulated in

*Daubert v. Merrell Dow Pharmaceuticals, Inc.* 509 U.S. 579 (1993) and *Allison v. McGhan Med. Corp.*, 184 F.3d 1300 (11th Cir. 1999).

## II.    LEGAL ARGUMENT

Defendants object to the Expert Disclosure filed by Plaintiff on February 5, 2019, which identifies Christopher Jarvis and Gary Bowers as expert witnesses for Plaintiff. Mr. Jarvis' designation as an expert witness is improper, as he does not provide any facts supporting his expert disclosure as required by this Court's Revised Scheduling Order and by *Fed. R. Civ. P.* 26(a)(2)(B).

Mr. Bowers' testimony is also improper since Mr. Bowers attempts to answer fact questions which are in the province of the trier-of-fact. Further, Mr.Bowers' expert testimony would not assist the trier-of-fact to understand an issue before the Court, and his methodology failed to take into account obvious alternative reasons regarding the causes in question. Defendants ask this Court to strike Plaintiff's Expert Disclosure related to this portion and under *Fed. R. Civ. P.* 37(c)(1) to exclude these individuals from testifying as experts.

### A.  Expert Disclosure Requirements

Rule 26(a)(2) of the *Federal Rules of Civil Procedure* sets forth the expert disclosure requirements, which provide that all expert witnesses must be disclosed and that certain experts must provide written reports in conjunction with the disclosure. *Fed. R. Civ. P.* 26(a)(2). The disclosure of an expert witness must be accompanied by a written expert report "if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." *Fed. R. Civ. P.* 26(a)(2)(B). The written report must be signed by the witness and contain the following:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;

> (ii) the facts or data considered by the witness in forming them;

01172663                                   Page **4** of **21**

(iii) any exhibits that will be used to summarize or support them;

(iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;

(v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

(vi) a statement of the compensation to be paid for the study and testimony in the case.

*Fed. R. Civ. P.* 26(a)(2)(B). If a witness is not required to provide a written report, the disclosure must state (i) the subject matter on which the witness is expected to present evidence under *Fed. R. Evid.* 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify. *Fed. R. Civ. P.* 26(a)(2)(C).

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial . . . ." *Fed. R. Civ. P.* 37(c)(1). Defendants clearly violated Rule 26(a) by failing to provide complete and accurate disclosures. Plaintiff's failure to provide complete and accurate disclosures prejudices Defendants by impeding their ability to meaningfully depose the identified experts and to confer with potential rebuttal expert witnesses.

**B. The Mere Identification of Christopher Jarvis and a Conclusory Statement as to His Testimony Does Not Meet the Requirements Imposed by Rule 26(a)(2)(C) of the *Federal Rules of Civil Procedure***

The Expert Disclosure of Mr. Jarvis submitted by Plaintiff is fatally deficient, as he fails to include *any* facts to support the disclosure, and he does not offer opinions on many of the areas he proposed to offer expert testimony. Plaintiff declares that he will be presenting evidence under *Fed. R. Civ. P.* 26(a)(2)(C). A witness so designated is required to (1) state "the subject matter on which the witness is expected to present evidence" and (2) offer "a summary of the facts and opinions to which the witness is expected to testify." *Fed. R. Civ. P.* 26(a)(2)(C).

###### i.    *Mr. Jarvis' Deficient Designations*

Plaintiff's submission notes Mr. Jarvis will testify as to the following subject matter:

- The 2016 Revenue Shortfall as that term is defined in the Membership Interest Purchase Agreement;

- That there were at least 36 captives attributable to him, including cells, under management at all times relevant to the terms of the Employment Agreement in this matter;

- That there were at least 16 Employee Originated Captives (as that term is defined in the MIPA [Membership Interest Purchase Agreement] and Employment Agreement), including cells, (EOCs) created in 2016 and at least 4 EOCs whose applications were in process at the time of his termination in 2017, and that Arsenal has continued even into 2018 to create captives for clients referred by Mr. Jarvis;

- Arsenal's accounting and invoicing methods in December 2016 and January 2017, and why certain invoices sent in early 2017 should count toward 2016 revenue;

- Defendants' and Arsenal's operation of a captive management company, and how such practices were not consistent with the best practices in the industry with which Jarvis is familiar based on his experience, training, education, and knowledge;

- The captive insurance industry; and

- Testimony regarding the purposes for the movement of certain captives managed by Jade Risk and Arsenal to Alabama from Oklahoma, and the "life cycle" of a captive insurance company.

(Exh. A at p. 3).

The designation of subject matter by Mr. Jarvis only satisfies one requirement under the witness disclosure rule; he is required to provide an opinion and supporting facts as to each of the proposed subjects. The Middle District recently addressed the standards of disclosure under *Fed. R. Civ. P.* 26a)(2)(C) in *Heard v. Town of Camp Hill* and held that a party fails to meet those standards when he does "little more than sketch out the broad contours of the subjects about which his experts will testify." 2017 WL 3622781, at *3–4 (M.D. Ala. Aug. 23, 2017). In *Heard*, the Court noted that in a 20-page disclosure, Plaintiff failed to provide any opinion beyond the fact that he would provide an opinion. What those opinions would be were not known or disclosed, nor

were any opinions linked to the facts on which they were based, as required by Rule 26(A)(2)(C). *Id.* Plaintiff's designation suffers from the same deficiencies in that it lacks opinions, and to the extent there is any opinion, it fails to identify the facts upon which the opinion is based.

- ***Mr. Jarvis' expected testimony that there was not a 2016 Revenue Shortfall***

Mr. Jarvis claims there was no 2016 Revenue Shortfall. Defendants admit that this is an opinion. However, Mr. Jarvis offers no facts to support this opinion. To be above the 2016 Revenue Shortfall, revenue from Jade Captives and EOCs must have been at or above $1,010,000. Plaintiff fails to disclose what the 2016 revenues should be or how he arrived at whatever number he believes is above the 2016 Revenue Shortfall. In short, he fails to supply any fact as to how he came to this opinion. It is therefore deficient and prejudices Defendants in that they are unable to analyze his opinion and properly prepare a response to it.

- ***Mr. Jarvis' expected testimony that there were 36 captives attributable to him, including cells, under management at all times relevant to the terms of the Employment Agreement in this matter.***

Again, Defendants admit that Mr. Jarvis states an opinion that, he believes, there have been 36 captives[1] attributable to him at all times. (Exh. A at p. 3). As before, Plaintiff fails to disclose any facts that would support this opinion. He fails to state which captives satisfy this requirement, when the captives were in operation, and how they were attributable to him. The only statement approaching this fact is that he bases this opinion "on the current financial data provided by Defendants." (*Id*. at 4). In short, he fails to supply any facts as to how he came to this opinion. It is therefore deficient and prejudices Defendants in that they are unable to analyze and respond to his opinion.

---

[1] "Captive" is shorthand for a captive insurance company, which is a main component of the underlying transaction between Plaintiff and Defendants. A captive insurance company is generally defined as an insurance that is wholly owned and controlled by its insureds.

- ***Mr. Jarvis' expected testimony that there were at least 16 Employee Originated Captives (as that term is defined in the MIPA and Employment Agreement), including cells, (EOCs) created in 2016 and at least 4 EOCs whose applications were in process at the time of his termination in 2017, and that Arsenal has continued even into 2018 to create captives for clients referred by Mr. Jarvis***

Defendants admit that Mr. Jarvis states an opinion here. Again, Plaintiff fails to disclose any facts that would support this opinion. He fails to state which captives are EOCs[2], which captives were created in 2016 and which were created in 2017, which captives were in process at the time of his termination, and which captives were created in 2018. Mr. Jarvis fails to supply any fact as to how he came to this opinion. The only statement approaching this fact is that he bases this opinion "on the current financial data provided by Defendants." (*Id*. at 4). Plaintiff's disclosure is deficient and prejudices Defendants in that they are unable to analyze his opinion and prepare a proper defense.

- ***Mr. Jarvis is also expected to testify regarding Defendants' and Arsenal's accounting and invoicing methods in December 2016 and January 2017, and why certain invoices sent in early 2017 should count toward 2016 revenue.***

Defendants admits that Mr. Jarvis has set forth some type of opinion as to why certain invoices sent in early 2017 should count toward 2016 revenue, but he fails to offer any opinion as to Defendants' and Arsenal's accounting and invoicing methods in December 2016 and January 2017. He fails to supply facts supporting his opinion on the former and lack of opinion and the latter. This prejudices Defendants in that they cannot prepare a proper defense.

---

[2] An EOC is a defined term in the Employee Agreement between Plaintiff and Defendants and stands for an Employee Originated Captive. Under the Employment Agreement Plaintiff is entitled to $20,000 for every EOC if he Defendants are managing at least 36 captives.

- ***Mr. Jarvis is also expected to testify regarding the Defendants' and Arsenal's operation of a captive management company, and how such practices were not consistent with the best practices in the industry with which Jarvis is familiar based on his experience, training, education, and knowledge***

Defendant admits that Mr. Jarvis has an opinion that Defendants' and Arsenal's operations were not consistent with the best practices of the industry. Again, he fails to supply a single fact which would support this opinion. This prejudices Defendant in that it cannot properly prepare a defense to these claims.

- ***Mr. Jarvis is also expected to testify about the captive insurance industry, including standard custom and practice in the industry and the negative effects of regulatory changes in the industry during the 2015-2017 time frame (including but not limited to the PATH Act, the Avrahami case, and IRS Notice 2016-66)***

Mr. Jarvis has broadly indicated that he will testify about the captive insurance industry and purports to offer opinions regarding standard customs and practices in the industry and what he claims to be the negative effects of regulatory changes in the industry from 2015 to 2017. However, he offers no facts to support his opinion as to industry standard practices or how the regulatory changes had a negative impact on the captive insurance industry. Nor does he even relate how this opinion is relevant to the present matter. This prejudices Defendant in that it cannot properly prepare a defense to these claims.

- ***Mr. Jarvis is also expected to testify regarding the purposes for the movement of certain captives managed by Jade Risk and Arsenal to Alabama from Oklahoma, and the "life cycle" of a captive insurance company***

Mr. Jarvis neither provides an opinion nor facts as to this topic. He does not state what purposes there are for moving captives from Alabama to Oklahoma nor any fact related to the "life cycle" of a captive. This prejudices Defendant in that it cannot properly prepare a defense to these claims.

### ii.   *The Court Should Exclude Mr. Jarvis' Expert Disclosure in Accordance with Rule 37(c)(1) of the Federal Rules of Civil Procedure*

This Court must exclude Plaintiff's disclosure of Mr. Jarvis from testifying at trial due to Plaintiff's failure to comply with Rule 26(a)(2)(C)'s requirements. According to Rule 37(c)(1) of the *Federal Rules of Civil Procedure*, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless." *Fed. R. Civ. P.* 37(c)(1). The Plaintiff bears the burden of proving substantial justification and harmlessness. *Mitchell v. Ford Motor Co.*, 318 F. App'x 821, 824 (11th Cir. 2009). In addition to excluding Plaintiff's experts, the court may also order payment of the reasonable attorneys' fees caused by the failure to comply with Rule 26(a)(2)(B). *Fed. R. Civ. P.* 37(c)(1)(A).

It is clear that Plaintiff has failed to comply with the requirements set forth by Rule 26(a)(2)(C) of the *Federal Rules of Civil Procedure.* Rule 37(c)(1) clearly mandates that Plaintff should not be allowed to use the information or witness to supply evidence. *Fed. R. Civ. P.* 37(c)(1). Plaintiff's failure to properly disclose the facts and opinions of Mr. Jarvis is extremely prejudicial to Defendants, as Defendants are unable to fully and accurately respond to Plaintiff's Expert Disclosure, are unable to meaningfully depose Mr. Jarvis, and are unable to make critical decisions regarding whether Defendants need to retain rebuttal experts to examine and counter Plaintiff's experts' opinions. For the aforementioned reasons, this Court should exclude Plaintiff's experts.

### C.   The Designation of Mr. Bowers as an Expert Witnesses is Improper and Does Not Meet the *Daubert* Standard

As an initial matter, Defendants are well aware that Plaintiff's claims and those addressed by Mr. Bowers' reports are made without a jury demand. As such, "'[t]he safeguards outlined in

*Daubert* are less essential in a bench trial'; a judge need not gatekeep for herself." *Braggs v. Dunn*, 317 F.R.D. 634, 643 (M.D. Ala. 2016). However, portions of Mr. Bowers' report are improper from the outset, regardless of who the trier-of-fact is, and pursuant to this Court's Order and out of an abundance of caution, Defendant's raise the present *Daubert* challenge to Mr. Bowers' expert report regarding the remainder.

Plaintiff has failed to meet his burden of satisfying each of the *Daubert* elements by a preponderance of evidence. In regard to the designation of Mr. Bowers as an expert witness, Plaintiff has failed to prove by a preponderance of the evidence that the methodology by which Mr. Bowers reached his conclusions is sufficiently reliable. Further, Plaintiff has failed to prove by a preponderance of evidence that Mr. Bowers' testimony would assist the trier of fact, through application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact issue. Finally, various portions of Mr. Bowers report is due to be stricken because they contain conclusions of law.

### i.   *Daubert* Standard

The admission of expert evidence is governed by Rule 702 of the *Federal Rules of Evidence*, as explained by *Daubert* and its progeny. *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005). Under Rule 702 and *Daubert*, district courts must act as "gatekeepers" which admit expert testimony only if it is both reliable and relevant. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). District courts are charged with this gatekeeping function "to ensure that speculative, unreliable expert testimony does not reach the" trier-of-fact under the mantle of reliability that accompanies the appellation "expert testimony." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002).

To fulfill their obligation under *Daubert*, district courts must engage in a rigorous inquiry to determine whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address;
>
> (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and
>
> (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*City of Tuscaloosa v. Harcros Chemicals, Inc.*, 158 F.3d 548, 562 (11th Cir. 1998). The party offering the expert has the burden of satisfying each of these three elements by a preponderance of the evidence. See *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999).

The *Daubert* Court listed four non-inclusive factors courts should consider in determining reliability under Rule 702: "(1) whether the theory or technique can be tested; (2) whether it has been subjected to peer review; (3) whether the technique has a high known or potential rate of error; and (4) whether the theory has attained general acceptance within the scientific community." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 593-94 (1993).In cases involving non-scientific expert evidence, "[t]hese factors are illustrative, not exhaustive; not all of them will apply in every case, and in some cases other factors will be equally important. . . . Sometimes the specific Daubert factors will aid in determining reliability; sometimes other questions may be more useful. As a result, 'the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable.'" *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999).

As for helpfulness, "the court must ensure that the proposed expert testimony is relevant to the task at hand, . . . i.e., that it logically advances a material aspect of the proposing party's case." *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1312 (11th Cir. 1999) (citations and internal

quotation marks omitted). Additionally, for expert evidence to be helpful to the finder of fact, it must offer insight "beyond the understanding and experience of the average citizen." *United States v. Rouco*, 765 F.2d 983, 995 (11th Cir. 1985).

> ### ii. Mr. Bowers' Methodology by Which he Reaches his Conclusions is Insufficiently Reliable as Required by Daubert and is Not Helpful to the Trier of Fact

- ### Mr. Bowers' opinion regarding the 2016 Revenue Shortfall should be stricken

Mr. Bowers' first opinion relates to whether there was a 2016 Revenue Shortfall, as that term is defined in the Membership Purchase Interest Agreement (the "Purchase Agreement") that was entered into between the parties as part of the sale of Jade Risk to Defendants. Under the Purchase Agreement there could be a reduction of the $750,000 promissory at a dollar-for-dollar rate should Mr. Jarvis fail to meet the shortfall number, which was set at $1,010,000. (Doc. 6-1, § 1.3(b)). If there is no shortfall, there is no offset. Ultimately, Defendants calculated the revenue for applicable captives and determined there was a significant shortfall. (JARVIS 1928-1931).

Mr. Bowers analyzed customer invoice reports and invoices to "determine the total amount of revenue from Jade Risk captives and EOCs for the time period of July 1, 2016 through December 31, 2016." (Exh. A. at Exh. B at p. 8) This portion of Mr. Bowers' report is clearly not expert testimony in any sense, since an average trier of fact can understand these facts for themselves (*e.g.*, by simple arithmetic).

Next, Mr. Bowers applies Generally Accepted Accounting Principles ("GAAP") to determine that certain revenue attributed to 2017 should have been attributed to 2016. Under the accrual-based GAAP principles, he states, "the collection of cash is not determinative of the recognition of income and expenses." As Mr. Bowers opines, "[u]nder GAAP, income should be

recognized in the period in which it was earned and expenses recorded during the period matching the income."

With this principle in mind, Mr. Bowers attributes $236,000 to the 2016 revenues based on six invoices dated 1/3/2017 which are purportedly for captive licensure work completed in 2016. He claims that, according to Mr. Jarvis, each of the captives to which these invoices pertain had a signed engagement letter indicating that final payment would be due when the captive received its license and that these captives were each licensed as of December 31, 2016. It is unclear that the inclusion of $236,000 in revenues toward the 2016 revenues is based on anything more than GAAP and Mr. Jarvis's own representations regarding these captives. It does not appear that Mr. Bowers based his conclusion on any independent verification of the engagement letters for these respective captives or the facts surrounding their licensure.

Furthermore, Mr. Bowers applies GAAP principles without any sound rationale. Although the GAAP principles may be generally accepted as the name implies, they do not recognize the facts and circumstances of the entity at issue in this matter. It is the revenues of Mr. Jarvis's former company, Jade Risk, LLC, and those other revenues of Arsenal Insurance Management, LLC which are attributable to Mr. Jarvis that are relevant to the 2016 Revenue Shortfall calculations. Mr. Jarvis and his business partner operated Jade Risk on a cash accounting basis prior to it being acquired by the Defendants. Defendants simply counted the revenues attributable to Jade Risk and Jarvis in the same way they had always been counted—based on cash collections. It would be illogical to count them any other way. Therefore, this portion of Mr. Bowers' report should be stricken.

- ***Mr. Bowers' opinion as to damages related to amounts allegedly owed under the Employment Agreement should be excluded because it is based on insufficient information and does not assist a trier-of-fact to understand any fact at issue***

The opinion of Mr. Bowers endeavors to determine what damages are owed under the Employment Agreement signed between the parties. To this point, Mr. Bowers merely reviewed the contract and, based upon Plaintiff's statement of the facts, applied those facts. Essentially, Mr. Bowers simply "did the math." This is not the province of an expert. *See LSQ Funding Group, L.C. v. EDS Field Services*, 879 F. Supp. 2d 1320 (M.D. Fla. 2012) (finding that a "simple arithmetic calculation" is not beyond the understanding of the average lay person and therefore would not help the trier of fact) (citing *Cook ex rel. Estate of Tessier v. Sherif of Monroe Cnty., Fla.*, 402 F.3d 1092, 1111 (11th Cir. 2005)). Beyond this, Mr. Bowers' analysis is not based on a proper methodology or on a sufficient factual basis.

The majority of Mr. Bowers' opinions regarding income owed in 2016 is based on a simple reading of the Employment Agreement. For instance, he opines there is $175,000 owed in deferred salary because the contract states Mr. Jarvis is entitled to $175,000 in deferred salary. Mr. Bowers *only* seeks to "calculate the amount of the EOC bonus that would be owed to Jarvis under the Employment Agreement." (Exh. A at Exh. B at p. 9). The formula for how this is determined in the Employment Agreement is simply calculated at $20,000 times each EOC, provided there are 36 Jade Captives under management. (Doc. 6-3, § 3.1).

To determine the amount of Mr. Jarvis's 2016 Employee Bonus, Mr. Bowers concludes that $320,000 is owed because Mr. Jarvis told him there were sixteen (16) EOCs created. As noted above, Mr. Jarvis in his own expert testimony failed to provide any basis for his opinion that there were 16 EOCs in 2016. Now this lack of disclosure is compounded since it is now embedded and forms the basis of Mr. Bower's opinion. Mr. Bowers has not determined which EOC's were

created, and he certainly has not pointed to any evidence, other than Mr. Jarvis's representations, to support his conclusion that $320,000 is owed to Mr. Jarvis. Based on this alone, Mr. Bowers' methodology in determining this figure is fatally flawed, and his opinion is equally improper. Perhaps Mr. Bowers' opinion would be proper if it identified a methodology by which he determined that 16 EOCs were created in 2016. However, this was not the case, and Mr. Bowers has done nothing more than simply help the Court multiply $20,000 by 16. Mr. Bowers simply cannot regurgitate Mr. Jarvis' conclusory beliefs and pass them off as an expert opinion. This methodology is well short of that which is plausible under *Daubert* and should be stricken.

- *Mr. Bowers' Analysis of the 2017 Salary and Severance Pay Owed Under the Employment Agreement Ignores Obvious Explanations as to Why He Was Compensated in a Certain Amount*

"A necessary ingredient [of opinions on causation] is the exclusion of alternative causes." *Michaels v. Avitech, Inc.*, 202 F.3d 746, 753 (5th Cir. 2000). Accordingly, "[i]n deciding whether an expert employed a reliable method, the district court has discretion to consider whether the expert has adequately accounted for obvious alternative explanations." *Brown v. Burlington N. Santa Fe Ry. Co.*, 765 F.3d 765, 773 (7th Cir. 2014) (internal alterations and quotation marks omitted); see *Packgen v. Berry Plastics Corp.*, 847 F.3d 80, 87 (1st Cir. 2017); *Redd v. DePuy Orthopaedics, Inc.*, 700 F. App'x 551, 554 (8th Cir. 2017). A "failure to test for . . . obvious and significant alternative explanations renders [an] analysis essentially worthless." *In re Wireless Tel. Servs. Antitrust Litig.*, 385 F. Supp.2d 403, 428 (S.D.N.Y. 2005) (internal quotation marks omitted).

As to the 2017 salary, Mr. Bowers looks to the relevant portion of the Employment Agreement to determine that Mr. Jarvis was entitled to $833.33 a month for each EOC under management, provided there are 36 captives under management. (Doc. 6-3, § 3.1(c)). Again, based

*only* on Mr. Jarvis's statement that there were 16 EOCs under management and without identifying them, Mr. Bowers takes Mr. Jarvis' salary for 2017, divides it by the number of months he worked, and then divides by $833.33. The product of this arithmetic is 16.08876. This, Mr. Bowers' circularly argues, purports to show that there, in fact, were 16 EOCs.

The underlying method of Mr. Bowers' determination is inherently flawed. He relies on Mr. Jarvis' unsupported statement that there were 16 EOCs to do the math to conclude that there were 16 EOCs. He fails to question how Mr. Jarvis came to this number or point to any evidence supporting the assertion.

In fact, Mr Bowers' opinion as to Jarvis's 2017 salary and the number of EOCs is wholly improper because he completely ignores the obvious explanation for the amount of Mr. Jarvis's compensation in 2017. As Mr. Bowers' notes, Mr. Jarvis was paid $15,000 per month in 2016. Since Mr. Jarvis was paid bi-monthly, he received $6,923.08 per pay period. The direct deposit receipts for Mr. Jarvis' salary in 2016 reflect this amount. (**Exhibit B** (JARVIS 00411, 01785, 01751)). Mr. Jarvis' salary continued at that rate in 2017, down to the penny. (**Exhibit C** (JARVIS 0002, 00774, 01814, 00393, 00396, 00399, 00402, 00405, 00408)).

Amazingly, Mr. Bowers fails to take into account that Mr. Jarvis was being paid the exact same amount in 2017 as he was in 2016. It would be quite shocking that his agreed upon salary in 2016 would equate exactly to his 2017 salary under the 2017 salary methodology in the Employment Agreement.

Mr. Bowers' failure to account for an obvious alternative explanation, *i.e.*, the fact that Defendants continued to pay Jarvis the same salary as owed in 2016 despite him not being owed any salary at all under the Employment Agreement, makes Mr. Bowers' testimony fundamentally

unreliable and due to be stricken. *In re Wireless Tel. Servs. Antitrust Litig.*, 385 F. Supp. 2d 403, 428 (S.D.N.Y. 2005).

Next, Mr. Bowers opines as to the amount of severance pay owed under the Employment Agreement. Mr. Bowers has no opinion as to whether Mr. Jarvis was terminated for cause and therefore not entitled to severance pay. Based on the faulty assumptions above, most importantly that Mr. Jarvis was being paid for 16 EOCs, Mr. Bowers states that Jarvis is entitled to over $1.7 million dollars in severance pay. Since this amount is based on the previously described incorrect amounts and on the unsupported statements of Mr. Jarvis, it is not scientifically related to any proper determination of damages. Therefore, it should be stricken.

- ***Mr. Bowers' Opinion as to the 2017 Bonus is Not Supported By Sufficient Evidence***

Mr. Bowers next opines that Plaintiff is owed $80,000 for a bonus because Mr. Jarvis told him there were four EOCs created in 2017. Again, there is no support underlying this determination, nor is there any reference to the particular EOCs and how they qualify as EOCs. Mr. Bowers is simply told a number (4) that he multiplies by $20,000. The trier-of-fact can do this multiplication in this matter without Mr. Bowers' assistance, and his expert opinion does nothing more than confuse the matters at issue in this case.

### D.  Mr. Bowers' Legal Conclusions Should Be Stricken

The portions of Mr. Bowers' opinion that contain conclusions of law should be stricken. The Eleventh Circuit has held that "testifying experts may not offer legal conclusions." *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1112 n. 8 (11th Cir. 2005). Mr. Bowers first testifies in his opinion that it "is certainly reasonable to believe that the captives who surrendered did so because of the increased regulatory burdens and scrutiny added by the PATH Act, the Avrahami decision, and the Classification of Interest notice, and not because of

anything Jarvis did or not do." (Exh. A at Exh. B at p. 4). Beyond this not being something Mr. Bowers' claims to opine on, he does not support this "certainly reasonable" legal conclusion with any factual evidence showing, for example, that there was an increase in captive surrenders or decrease in captive formations after these legal and regulatory developments. The determination of why captives surrendered is the ultimate issue for the Court to decide, and Mr. Bowers has not laid any factual predicate to assist the Court in making this determination.

Mr. Bowers then states that, based on a number of captives moving from one domicile to another, there was likely some "overlap" for some of the captives during which "both the surrendered or terminating captive from the original jurisdiction and the new Alabama captive existed at the same time while the original captive was in what is known as the 'runoff' period." (Exh. A at Exh. B at 5). As Mr. Bowers elaborates, "[j]ust because a company ceases to write new policies, the company is still actively engaged in the business of insurance until those liabilities have been satisfied either through settling the claims, reinsuring the liabilities or through a novation." (Exh. A at Exh. B at p. 6). Mr. Bowers goes on to state that "overlap" would be a consequence, *i.e.*, that the both captives could be active at the same time. Mr. Bowers continues and expounds upon this legal conclusion by holding that "if a captive is going to be surrendered or terminated, the captive manager will continue to play a role in managing existing liabilities." (Exh. A at Exh. B at p. 7).

The issue of what constitutes an "active" captive is a highly contested issue in this case. As shown above and in the Agreements, there are financial implications for the salary and/or bonus owed to Mr. Jarvis depending on whether captive revenue and total number of active managed captive thresholds are met. The determination of whether a captive is active is a final issue for this

Court. Mr. Bowers' attempt make this legal conclusion is improper and should be stricken. This should also include the conclusory material surrounding the conclusion.

Mr. Bowers also states that there was no 2016 Revenue Shortfall. (Exh. A at Exh. B at p. 9).   The determination of the 2016 Revenue Shortfall is a fundamental aspect of Plaintiff's claims and is a legal conclusion that should be stricken.

## III.   CONCLUSION

Plaintiff has clearly failed to comply with the Federal Rules regarding disclosing Mr. Jarvis as an expert witness. Additionally, Mr. Bowers' expert report does not meet the standard imposed by *Daubert* and thus his designation as an expert witness is improper. For the aforementioned reasons, this Court should strike the Plaintiff's Expert Disclosure of Mr. Jarvis and Mr. Bowers and exclude Plaintiff's experts from testifying in this matter. Additionally, this Court should order the payment of the reasonable expenses, including attorneys' fees, for Plaintiff's failure to comply with Rule 26(a)(2)(B) of the *Federal Rules of Civil Procedure.*

**Respectfully submitted** this 19th day of February, 2019.

*/s/ Royal C. Dumas*
Royal C. Dumas (ASB: 1404-R60D)
**Attorney for Plaintiffs**

**OF COUNSEL:**
GILPIN GIVHAN, P.C.
2660 EastChase Lane, Suite 300
Montgomery, Alabama  36117
Telephone: (334) 244-1111
Fax: (334) 244-1969
Email: rdumas@gilpingivhan.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this **19th** day of **February, 2019**, I electronically filed the above and foregoing document via CM/ECF system which will send notification of such filing to the following electronically:

Marcus M. Maples, Esq.
Baker, Donelson, Bearman,
  Caldwell & Berkowitz, P.C.
420 North 20th Street
Suite 1400, Wells Fargo Tower
Birmingham, Alabama 35203
mmaples@bakerdonelson.com
**Attorneys for Plaintiff**

Timothy Cleveland, Esq. (Pro Hac Vice)
Kevin J. Terrazas, Esq. (Pro Hac Vice)
Cleveland Terrazas, PLLC
4611 Bee Cave Road, Suite 306B
Austin, Texas 78746
tcleveland@clevelandterrazas.com
kterrazas@clevelandterrazas.com
**Attorneys for Plaintiff**

*/s/Royal C. Dumas*
OF COUNSEL