IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

CHRISTOPHER JARVIS,          )
                             )
Plaintiff,                   )
                             )
v.                           )          Case No. 2:17-cv-00396-ALB
                             )
TAYLORCHANDLER, LLC, T.      )
BRITT TAYLOR, NORMAN         )
CHANDLER, and JAMES R.       )
JOHNSON                      )

Defendants.

## MEMORANDUM OPINION AND ORDER

This order resolves the issue of attorneys' fees in this case. The Court entered an opinion and order resolving the competing claims in this case on August 19, 2020. *See* Doc. 228. As part of that opinion and order, the parties were directed to file statements of attorneys' fees and costs. On September 16, 2020, Plaintiff and Defendants filed their statements of costs. *See* Docs. 231 and 232. On September 28, 2020, Plaintiff and Defendants filed their objections to each other's statements of costs. *See* Docs. 236 and 237. On October 30, 2020, Plaintiff and Defendants filed responses to each other's objections to statements of costs. *See* Docs. 244 and 245.

## PLAINTIFF'S FEES

Plaintiff has requested $618,947.08 in fees and has supported that request with substantial documentation. As explained in the previous opinion and order, Plaintiff has the right to attorneys' fees as the prevailing party under his contract with Defendants.  Alabama law governs that contract.  *See* Doc 1-4 ("This [a]greement shall be governed by and construed in accordance with the laws of the State of Alabama.")  Because Alabama law governs the contract, Alabama law governs Plaintiff's right to attorneys' fees under that contract.[1]  *See Trans Coastal Roofing Co. v. David Boland, Inc.*, 309 F.3d 758, 759 (11th Cir. 2002) (holding that where a claim for attorneys' fees sounds in a case that is present in federal court under diversity jurisdiction, the appropriate law is state law). In Alabama, the fee must be reasonable and whether a requested fee is reasonable is within the sound discretion of the trial court.  *Beal Bank, SSB v. Schilleci*, 896 So. 2d 395, 400 (Ala. 2004).  The evaluative, but not exhaustive, list of criteria for a court to consider in making this determination is as follows: (1) the nature and value of the subject matter of the employment; (2) the learning, skill, and labor requisite to its proper discharge; (3) the time consumed; (4) the professional experience and reputation of the attorney; (5) the weight of his responsibilities; (6) the measure of success achieved; (7) the

---

[1] Defendants argue that the fee calculation is governed by federal law.  *See* Doc. 237 at 5-6.  As noted above, Defendants are wrong. But, even if they were correct, there is no meaningful difference between the fees that federal law and state law would allow in this case.

reasonable expenses incurred; (8) whether a fee is fixed or contingent; (9) the nature and length of a professional relationship; (10) the fee customarily charged in the locality for similar legal services; (11) the likelihood that a particular employment may preclude other employment; and (12) the time limitations imposed by the client or by the circumstances. *Id.*

Defendants make numerous arguments for the reduction of Plaintiff's requested fees. Each is addressed below. In addition to multiple briefs, Defendants submitted edited versions of Plaintiff's invoices that bear seventeen different shades of highlighting; only two of which are dealt with in their briefs. As little has been done to clearly define the arguments that are tied to the colored highlights, the Court will attempt to interpret the implicit arguments from the clues in the color legend.

### 1. Conclusory Statements

First, Defendants argue that Plaintiff makes conclusory statements about the fees he is due without presenting evidence. Specifically, Defendants argue that "there were no invoices for Cleveland Terrazas PLLC prior to…July 31, 2019," and "object to the amount claimed because Plaintiff's submitted invoices come nowhere close to this amount." *See* Doc. 237 at 4. This objection was resolved by Plaintiff's supplemental filing with additional invoices. *See* Doc. 242-1.

### 2.  Reasonableness of Lawyer Rates

Plaintiff asks for rates of compensation ranging from $230 per hour for an attorney with 2 years of experience, to $365 per hour for an attorney with 14 years of experience.  *See* Doc. 244 at 6.  Defendants argue that these hourly rates are unreasonable.  They are not.  The Court takes the 12 non-exhaustive factors from *Beal Bank* in turn.

The first factor, complexity of the case, weighs in favor of Plaintiff.  Although at first blush a simple contract dispute, the controversy expanded to litigation about Jarvis's activities as an employee, his marketing of a novel financial product, the valuation of new clients, discovery-related misconduct, and Defendants' multi-million-dollar counterclaim for fraud.

The second factor, the learning and labor required to properly litigate the case, also weighs in favor of Plaintiff.  This was not the typical employment action. The trial was brief, and the discovery was not particularly complicated.  But the case involved complex financial arrangements, a very complicated employment agreement, and multiple expert witnesses on both sides. Only lawyers who specialized in financial and business litigation would be able to handle this case.

The third factor, the time spent, weighs heavily in favor of Plaintiff.  Plaintiff spent 2,417.65 hours litigating this case. *See* Doc. 244 at 10.  Tim Cleveland and Marcus Maples, the lead attorneys for Plaintiff, claim 703 and 321 hours

respectively.  That is a substantial investment of time. But it is small enough to establish that Plaintiff's lawyers handled the case economically and efficiently. Especially considering Defendants' multi-million-dollar counterclaim, this case could have justified a much greater investment of lawyer time.

The fourth factor is the professional experience and quality of the attorneys involved.  This factor also favors Plaintiff.  Plaintiff did not hire attorneys with many decades of experience, but he did hire accomplished ones. After graduating from the University of Texas School of Law with honors, Tim Cleveland practiced civil litigation for eleven years before beginning this case.  He is one of the founding partners of the law firm Cleveland Terrazas LLP.  Marcus Maples is a shareholder at Baker Donelson, one of the biggest law firms in Alabama.  Further, their co-counsel Murrell, Krist, and Arbuckle are all highly qualified attorneys. The Court was impressed with the trial performance and briefs of all counsel, including Defendants' counsel.

The fifth factor is the weight of the responsibilities.  This factor weighs in favor of Plaintiff.  The entire case was handled by one small team of attorneys from beginning to end over a period of three years.  This small team handled every facet of the litigation including discovery, motions practice, and trial.  This case saw voluminous filings, including substantial spoliation motions and a flurry of

evidentiary filings prior to trial.  The weight of the responsibilities on Plaintiff's attorneys was significant.

The sixth factor is the measure of success achieved and it weighs in favor of Plaintiff.  Plaintiff's counsel successfully argued that Defendants' counterclaims were without merit and prosecuted the case against Defendants for breaching their contract with Jarvis.  Although Plaintiff's counsel did not successfully recover any severance damages, they did obtain deferred salary payments and the balance of the promissory note for their client.

The seventh factor is the degree to which Plaintiff's counsel incurred expenses in their representation.  This factor also weighs in Plaintiff's favor.  This matter was litigated for three years and, although the trial was over in a matter of days, Plaintiff's counsel incurred great expense in preparation.  Plaintiff's counsel retained the services of expert Gary Bowers at the cost of $300 per hour. *See* Doc. 145-2 at 2.  At this rate, Gary Bowers prepared an expert report, attended his deposition, and traveled some distance to be present for a trial at which he testified.  Plaintiff's counsel also compensated court reporters for multiple depositions in portions ranging up to nearly $7,000.  *See* Doc. 231-4 at 21.  This trial was not a cheap affair for Plaintiff's counsel.

The eighth factor, whether the fee is contingent or set, also weighs in favor of Plaintiff.  In instances where a plaintiff has been given a substantial trial award and

6

the plaintiff's attorney has a contingent fee agreement, it sometimes makes sense to reduce the rate at which the attorney is compensated by an independent award of attorney's fees. *See, e.g., Rothenbecker v. Astrue*, 764 F. Supp. 2d 697, 698 (M.D. Pa. 2011)(holding that an attorney's fee award in a successful litigation would be reduced because the attorney was already due to receive an amount under the contingent fee agreement that worked out to twice his normal hourly rate). In this case, there is no contingent fee agreement.

The ninth factor is the length of the attorney-client relationship and, once again, this factor favors Plaintiff. This litigation was not short. The original action was filed in June of 2017 and the attorneys were still filing objections and responses as recently as one month ago. The case found its way to multiple judges and motions were filed at every stage of the litigation. The average length of civil cases in federal district courts across the United States is 10 months. *See IN RE: COVID-19 Business Interruption Protection Insurance Litigation*, MDL-No.-2942, Doc. 457 at 16. This case lasted 56 months and Plaintiff's attorneys were at their client's side the entire time. *See* Docs. 1 and 277.

The tenth factor is the amount of money customarily charged in the locality for similar legal services. The hourly rates requested here are well within the range of rates that have been approved in this district before. *See United States ex rel. Foley v. Mitchell*, 2019 WL 6134159, at 2–3 (M.D. Ala. 2019) (approving rates up

to $650 per hour); *Shultz v. Aetna Life Ins. Co.*, 398 F. Supp. 3d 1188, 1195–1196 (M.D. Ala. 2019) (approving rates of $350 per hour); *Hayden v. Vance*, 2016 WL 4157362, at *3 (M.D. Ala. June 28, 2016), *report and recommendation adopted*, 2016 WL 4180971 (M.D. Ala. Aug. 4, 2016), *aff'd*, 708 F. App'x 976 (11th Cir. 2017) (approving $200 per hour for an attorney with 6 years of experience to $400 per hour for an attorney with 36 years of experience).

The eleventh and twelfth factors, the extent to which this representation precluded others and any time restrictions Plaintiff put on representation, favor Defendants. Although the representation continued for three years, there is no evidence that the time commitment of Plaintiff's counsel was so extensive at any time that they were precluded from taking on other matters. Similarly, there is no evidence that Plaintiff put any time restrictions on representation by counsel.

Nearly all these factors favor the conclusion that the rates requested by Plaintiff are reasonable. While the section of Defendants' brief dealing with unreasonable rates mentions all of Plaintiff's counsel, the light green highlights on the invoices, meant to indicate unreasonable rates, focus their attention almost entirely on Jade Sipes. The Court will assume that this is meant as a more focused attack on the reasonability of her rates. More than a dozen of Sipes' time entries are highlighted. Jade Sipes is an eighth-year associate attorney at Baker Donelson. In 2012, she graduated summa cum laude from the University of Alabama School of

Law as a member of the Order of the Coif, a Hugo Black Scholar, and a Senior Editor of the Alabama Law Review.  She then clerked for the Honorable Emmett Ripley Cox, Senior Judge of the United States Court of Appeals for the Eleventh Circuit. Since then she has built a practice that focuses on financial matters stemming from complex federal statutes.  It is the opinion of this Court that the rates requested by Ms. Sipes, as well as the rest of Plaintiff's counsel, are reasonable.

### 3. Reasonableness of Paralegal Rates

There are three controversies regarding the rates of paralegals.  First, Defendants argue that the $200-230 hourly rate sought by Baker Donelson for its paralegals is unreasonable.  Second, Defendants argue that the compensation of the younger Cleveland Terrazas attorneys, who did not obtain pro hac vice admission to practice in the Middle District, should be set at paralegal rates.  Third, Defendants argue that Plaintiff may not charge for work done by clerks.

Defendants' point concerning the paralegals of Baker Donelson is well made. The attached affidavit of Doe Dorsey, the Director for Region II of the Alabama Association of Paralegals, affirming that $90-100 is a reasonable rate for paralegals in the Montgomery legal market, seems as authoritative a source as any.  *See* Doc. 237-4 at 3.  Plaintiff, on the other hand, makes no attempt to point to any affidavits of his own.  Plaintiff merely states that, if the Court is inclined to agree with Defendants, then the reduction should only be to the $125 hourly rate agreed to in

9

*Shultz v. Aetna Life Ins. Co.. See* Doc. 244 at 10.  What Plaintiff fails to acknowledge is that the paralegal rate agreed to in *Shultz* was not contested and the court undertook no analysis of the question.  The parties agreed to the rate of $125 per hour beforehand and the court merely chose not to disturb this agreement. *See Shultz*, 398 F. Supp. 3d at 1195–1196 (M.D. Ala. 2019) (noting that "the parties agree that Claudette Fowler, a paralegal, is entitled to a rate of $125 per hour").  Doe Dorsey's affidavit is the Court's only source of information on the question of paralegal rates and therefore the Court holds that the rate of compensation for Baker Donelson's paralegals will be reduced to $100 per hour.

Although neither party mentions the names of the Baker Donelson paralegals at issue, the only name from the Baker Donelson invoices that was omitted from the attorney rate argument is Debbie Caitlin.  The Baker Donelson firm website lists Debbie Caitlin as a paralegal.[2]  During this litigation, Ms. Caitlin's time was billed at no fewer than four different rates.  Her time was billed at $205 per hour, $210 per hour, $220 per hour, and $0 per hour, among others.  In order to bring these various rates into conformity with the $100 rate, charges connected to Ms. Caitlin are due to be reduced by a total of $2,054.

The second question relating to paralegals is Defendants' position that three young associates employed by the Cleveland Terrazas law firm ought to be

---

[2] Professionals – Debbie Caitlin, https://www.bakerdonelson.com/debra-g-catlin (last visited December 22, 2020).

compensated at paralegal rates because they were not admitted pro hac vice to the bar of the Middle District of Alabama.  *See* Doc. 243 at 2.  Plaintiff responds that all of Defendants' cases are federal, and consequently inapposite, but has failed to cite any cases from the state of Alabama. *See* Doc. 244 at 8.

The six federal cases cited by Defendants are inapposite.   In four of them, the federal court is attempting to interpret the Equal Access to Justice Act, a federal statute relating to Social Security.  *See Callaway v. Acting Comm'r of Soc. Sec.*, 802 Fed. Appx. 533 (11th Cir. 2020); *Zech v. Comm'r of Soc. Sec.*, 680 F. Appx. 858 (11th Cir. 2017); *Burton v. Berryhill*, 2017 U.S. Dist. LEXIS 157032, 8-9 (S. D. Ala. 2017); *Flournah v. Comm'r of Soc. Sec.*, 2017 U.S. Dist. LEXIS 81601, 3-5 (M.D. Fla. 2017).  In one, a federal court is interpreting a different federal statute but cites only cases where federal courts were interpreting the EAJA.  *See Senn. Bros. v. Heavenly Produce Palace LLC*, 2020 U.S. Dist. LEXIS 78257 (S. D. Ga. 2020).  In the last case, the attorney in question had not been admitted to any bar at all.  *See Laube v. Allen*, 506 F. Supp. 2d 969, 988 (M.D. Ala. 2007).

In any event, the Court is not convinced that federal caselaw is controlling as to Plaintiff's right to fees under Alabama law. As the Eleventh Circuit explained in *Trans Coastal Roofing Co. v. David Boland, Inc.*, 309 F.3d 758, 760 (11th Cir. 2002), when a claim for attorneys' fees sounds in state law, the substantive law of the forum state must be applied.  Here, the claim for attorneys' fees sounds in state

law as it is part of a contract.  And there is nothing about the Alabama test for the reasonableness of an attorney's fees that would require the attorney to be a member—pro hac vice or otherwise—of the bar of the court where the litigation took place. The work performed by Krist, Arbuckle, and Murrell is the type of work that is customarily performed by associate attorneys.  And the Court finds that the rates requested for Krist, Arbuckle, and Murrell are reasonable and appropriate.

The third and final cotroversy seems to be a terminological misunderstanding. Although Defendants argue that Plaintiff's counsel, specifically Cleveland Terrazas, cannot recover for work done by office clerks, Plaintiff has clarified that this firm uses their clerks as paralegals and that they complete work normally assigned to paralegals, such as intensive discovery review.  *See* Doc. 244 at 9–10.  Because Cleveland Terrazas seeks only $85 per hour for this paralegal work, the rate is acceptable.  *See* Doc. 231-4 at 34.

### 4. Reasonableness of the Number of Hours Spent

In Defendants' brief, they ask for reductions in Plaintiff's billed hours because they were spent unsuccessfully disputing motions to compel, were recorded in block billing, lack sufficient detail, or were for some reason unnecessary.  Other arguments about the reasonableness of Plaintiff's hours that are included solely in Defendants' highlights are their objections to time spent on non-required tasks (lavender), zero fees (mauve), impossible tasks (tan), excessive time (light peach), unreasonable time

(brown), withdrawn claims (teal), time billed but never used (hunter green), time spent on spoliation (red), and time acquired after trial (orange).

    a. Motions to Compel

    Defendants object to time billed by Plaintiff's attorneys in the course of resisting Defendants' motions to compel. *See* Doc. 237 at 9. They cite *Laube* for the proposition that attorneys' fees incurred resisting motions to compel that were eventually granted are not "directly and reasonably incurred in proving any rights violation or in securing any form of court-ordered relief." *Laube*, 506 F. Supp. 2d at 983. Plaintiff responds that the fees were reasonable and necessary, and in any event the employment agreement, which authorizes the fees in the first place, mentions no limit for motions to compel. *See* Doc. 244 at 12.

    The Court finds Defendants' argument on this point unconvincing. First, in *Laube*, the court disallowed recovery of fees incurred in filing a motion to compel, not responding to one. Defendants' argument that plaintiffs should not be permitted to recover for "inflating hours by not properly responding" is much more relevant to the holding in *Laube* than what the Court confronts here. The filing of motions to compel may be frivolous because the information sought may be irrelevant. A flurry of such motions could truly inflate billed hours. Responding to a motion to compel on the other hand, is never inherently frivolous because some response is required even if the motion has merit. And it does not appear to the Court that the basis for

Plaintiff's resistance to the motions to compel was entirely frivolous.  It also seems that a principle underlying Defendants' argument here is that the reimbursement of time spent on a motion to compel depends upon its success.  This is not true. Reimbursement under the contract depends only upon success on the merits, and Plaintiff won.

> b.  Block Billing Is Compensable in Alabama

Defendants argue that block billing is not permissible, again citing *Laube*. Plaintiff replies again that Defendants may not overcome his fee requests using federal law when state law governs this case.  Plaintiff's block billing is unproblematic in the state of Alabama as long as Plaintiff has provided enough detail for a court to assess the fees.  *See Harris v. Capell & Howard, P.C.*, 280 So. 3d 419, 427 (Ala. Civ. App. 2019)(holding that, even in an instance where a contract specifically called for detailed billing, block billing was permissible as long as there was sufficient detail for assessment by a trial court).  In this case, Plaintiff provided a great deal of detail for each block billing entry.  Even in the block billing entries cited by Defendants, presumably the most vulnerable ones, Plaintiff goes into detail discussing research for a *Daubert* motion and which section of a summary judgment motion was being revised.  *See* Doc. 237 at 12–13.  These entries are compensable.

c.  Entries Lacking Sufficient Detail

Defendants make two arguments that some of Plaintiff's time entries are impermissibly vague.  First, Defendants argue that Plaintiff has excessively redacted his time entries such that the Court cannot properly determine if the time is properly compensable.  Second, Defendants argue that there are unredacted entries which provide too little detail for the Court to properly assess their merit.  *See* Doc. 237 at 11–12.  Plaintiff responds that none of his billing is vague and that redactions were necessary to protect attorney-client privilege.  *See* Doc. 244 at 11–12.

In order to decide the matter, the Court ordered Plaintiff to submit all his invoices directly to the Court for in camera review.  *See* Doc. 247.  After a thorough review of all redacted entries, the Court concludes that all but one entry are sufficiently detailed to be compensable.  On March 6, 2019, Marcus Maples spent 12 minutes on correspondence that does not appear related to this case.  Therefore, a corresponding reduction of $70 is appropriate.

Defendants attack many non-redacted entries on the grounds that they do not provide requisite detail.  Most of Defendants' attacks miss the mark.  There are six entries, however, that will be justifiably subtracted.  Four of these entries merely record attorneys paying attention to things.  On September 16, 2019; January 7, 2020; February 9, 2020; and March 17, 2020 Plaintiff's counsel charged a total of $315 dollars for paying attention to things.  These include "attention to discovery

issues," "attention to case issues," and "attention to pretrial issues."  These entries are not detailed enough to understand. Accordingly, Plaintiff's fees will be reduced by $315.

Defendants also highlight a number of Plaintiff's entries that state only that counsel was preparing for trial.  Trial preparation is an inherently compensable activity. The Court could not reasonably expect a billing record to identify every rehearsed line, every strategic contingency, and every reread document.  *See, e.g.*, *Lenihan v. City of New York*, 640 F. Supp. 822, 826 (S.D.N.Y. 1986)(holding that, given the context added by nearby entries that show what was being prepared for, entries including "preparation for trial" are compensable); *see also Royal Bahamian Ass'n, Inc. v. QBE Ins. Corp.*, 2011 WL 13220459, at *10 n.8 (S.D. Fla. May 18, 2011), *report and recommendation adopted*, 2011 WL 13220497 (S.D. Fla. June 20, 2011) (suggesting that the court would be inclined to sustain the compensability of entries including "trial preparation" based on cases including *Lenihan*).

Another two entries will be struck because they involve no attorney or activity.  They say only "Arsenal matter: other."  These two entries, one with no date but presumably December 31, 2019, and one with a date range between September 1 and 30, 2019, will be struck for a reduction of $132.29.

d.  Work on Withdrawn Claims

Defendants argue in their briefs that time spent preparing a response in opposition to their motion for summary judgment was unnecessary because Plaintiff did not file a response in opposition. *See* Doc. 237 at 14. Because Plaintiff has not chosen to contest this argument, it is deemed conceded. *See generally* Doc. 244. The five related entries totaling $6,000 that were mentioned in Defendants' brief will be deducted from Plaintiff's recovery.

Defendants' highlighting expands this argument substantially. There are nine total entries that are highlighted in teal, the color associated with the withdrawn claims. Of these nine, Defendants specified only five in their brief. One of the remaining four is very similar to the first five; Matthew Murrell is found billing time for research and analysis to prepare a summary judgment response that was never filed. Although this entry was not specified by Defendants in their brief, the Court finds that Plaintiff's concession of time entries that involve work on an unfiled response in opposition ought to extend to this one. This results in an additional reduction of $1,150.

The final three teal highlights also relate to withdrawn claims but in a different context. On December 20, 2019, and January 2, 2020, Plaintiff's counsel worked on a motion to nonsuit the claims mentioned in Defendants' motion for summary judgment, and then reviewed the Court's order granting that motion. Because this motion was filed, the attorneys' fees incurred in its preparation are recoverable.

Although the Court assumes Defendants' implicit highlight argument is that anything related to those claims should be struck because the claims themselves were not meritorious, the motion to nonsuit claims appears to the Court more like a strategic concession than an admission of frivolity.

The final teal highlight is found on March 3, 2020.  This was for time spent reviewing a court order granting a joint motion for the dismissal of counts brought by both parties.  Whatever logic there might have been in arguing that Plaintiff's withdrawal of claims can be equated to an admission of frivolity is certainly less present in a context where the motion is a joint one and the filing was prompted by the Court.

e.  Fees Relating to Spoliation

Both parties agree in their briefs that it is not appropriate for Plaintiff to recover fees incurred defending against spoliation or the final deposition of Julia Stuart.  *See* Doc. 237 at 4 & Doc. 231 at 1–2.  Plaintiff estimates that he incurred charges of $35,930.53 in connection with the spoliation issue and writes in his costs submission that he has already subtracted that sum from his requested attorneys' fees.  However, the invoices from Baker Donelson and Cleveland Terrazas still included some charges related to spoliation.  Defendants highlighted these charges in red for the benefit of the Court.  They are the same amount—$35,000—that

Plaintiff has conceded is due to be subtracted from the amount due and has not included in his total demand.

    f.  Excessive Time Spent

The next category of implied argument from the highlighted invoices is excessive time. Entries that Defendants believe are excessive received light peach highlights. There are seven total entries that are highlighted in light peach but only one is due to be reduced for excessive time.

On September 22, 2017, Debbie Caitlin spent 36 minutes reviewing two orders and emailing one of them to Tim Cleveland. As the orders are a combined eleven lines of text, *see* Docs. 20 and 21, 36 minutes is too long to spend reading them and emailing one of them to someone. This entry will be reduced to 24 minutes. After taking the reduction in Caitlin's paralegal rate into account, this entry will be reduced by $75.

On August 29 and 30, 2017, Caitlin spent 30 minutes checking the court docket and drafting a notice of appearance for Marcus Maples. This is an acceptable period of time to review a docket and draft a court filing; even the simplest filings require the consultation of local rules and the location of a template. On January 31, 2020, Marcus Maples logged three entries totaling 30 minutes for the review of correspondence, two filings, and a court order. This is an acceptable duration for those tasks. Finally, on September 20, 2019, Marcus Maples billed 12 minutes for

19

the receipt and review of a notice of appearance.  This is an acceptable amount of time in which to review a court filing.

g.  Impossible Entries

On November 14, 2019 Marcus Maples billed time for analyzing whether to make a jury demand.  This entry was given its own section in Defendants' brief and is the only one that has been highlighted in tan for impossibility. Rule 38(b)(1) of the Federal Rules of Civil Procedure provides that a party may demand a jury no later than 14 days after the last pleading is served.  In this case, all pleadings had been served well over 14 days before November 14.  Therefore, Maples' analysis was futile and will be discounted for a reduction of $70.

h.  The Purple Entries

There are three shades of purple on Defendants' table of highlights: mauve, lavender, and a faded periwinkle.  According to the color legend provided by Defendants, the mauve stands for zero fees, the lavender for time not required in the case, and the faded periwinkle for time billed but attributable to another case. However, the only shade of purple that appears in Plaintiff's invoices is decidedly mauve.

The Court begins with entries related to another case, which should appear highlighted in faded periwinkle.  Defendant has pointed to, and Plaintiff has conceded, two such entries.  However, these two entries are highlighted in blue.  *See*

Doc. 231-5 at 121.  As Defendants have not provided the Court with any other concrete examples of entries related to a different case, and there are no entries highlighted in faded periwinkle, the final reduction for this category is $2,485.

Now come two additional layers of complexity.  First, as the Court was unable to pinpoint entries highlighted in lavender, it will test all entries highlighted in mauve for reductions based on both "zero fees" and "time not required."  Second, it is unclear what is meant by either of these categories.  While "time not required" is presumably meant to refer to time that is not required, this does not tell the Court why it isn't required; this is the point of objecting to attorneys' fees.  The Court therefore turns to the content of the highlighted entries to derive the purpose of the highlights.

Nearly every single one of the mauve highlights relates to the same activity: Marcus Maples' drafting of an expert report where he attests to the appropriate level of attorneys' fees for this case.  The peculiar thing about these entries is that they occurred well before Plaintiff was awarded any attorneys' fees.  Under Defendants' "zero fees" category, the objection might be that this work was done at a time when zero fees had been awarded, thus rendering it unnecessary.  This same argument works for the "time not required" category.  In either case, the Court disagrees.  The fact is that Plaintiff has now been awarded attorneys' fees as a consequence of prevailing on the merits.  It was necessary for him to support his request for fees

with a report by someone familiar with rates in this locality.  Marcus Maples' report completes that requirement.  When he wrote it is of little import.

i.  Time Billed but Never Used

While it is unclear what is meant by the phrase "time billed but never used," and the hunter green shade is difficult to differentiate from the wintergreen shade used for "improper rate" on the invoices, there does appear to be one entry that qualifies.  On August 6, 2019, Marcus Maples logged that he received and reviewed correspondence from Tim Cleveland and drafted a response.  However, the entry reflects that he billed zero minutes for this work and thus charged zero dollars. Defendants could not have intended this entry to fall under the "improper rate" category because there was no time to be billed at any rate.  The objection seems to be that Maples created a billing entry but never actually entered time in it.  To the extent that Defendants object to being charged zero dollars, and it appears they do, their objection is denied as moot.

j.  After Trial Acquired Time

According to Defendants' color legend, entries that log "time acquired after trial" are highlighted in burnt orange.  Once again, determining precisely which highlights fall into this category is complicated by the fact that one color might mean one thing on the color legend and another thing on the invoices and the invoices may even disagree with each other. According to the color legend, red connotes entries

that are related to spoliation and burnt orange connotes "time acquired after trial." Both colors appear on the Cleveland Terrazas invoices in contexts that match the objections specified by the color legend.  However, on the Baker Donelson invoices, there are no red highlights and the burnt orange highlights, instead of connoting time acquired after trial, appear on dozens of entries relating to spoliation.  Only four of the burnt orange entries from the Baker Donelson invoice were logged after the conclusion of the trial, and therefore would qualify for time acquired after trial. However, as these are all related to defending Julia Stuart's second deposition, and have therefore been conceded by Plaintiff and subtracted by the Court, the Court turns its attention exclusively to those highlights appearing in the Cleveland Terrazas invoice.

A further complication is that, even within the five highlighted entries in the Cleveland Terrazas invoice that qualify for this category by the context of their narratives, there are two competing shades of orange.  One is the same burnt orange that appears in the Baker Donelson invoices and on the color legend, and the other is a light marigold color.  However, unlike the different shades of green and purple, there are no other shades of orange provided on the color legend, and all entries related to spoliation in the Cleveland Terrazas invoices are correctly colored red. Therefore, although some entries are a different shade of orange, there is nothing else they could be.

The first two, both highlighted marigold, were logged on February 22 and 23, 2020, and they have the same narrative: prepare for trial.  By highlighting these, Defendants seem to imply that Plaintiff logged time for trial preparation after the trial had completed.  However, while most of the trial had concluded by February 22, its last day was February 26.  As the Court has discussed above, "prepare for trial" is sufficient narrative detail and such an entry is permissible until the last day of trial has concluded– there was a great deal to prepare for on the last day, including closing statements.

Of the other three, all highlighted burnt orange, two occurred on August 21 and a third on August 25, 2020.  After the Court issued its opinion in this case, Cleveland Terrazas logged a total of four hours and thirty-six minutes over eight entries analyzing the opinion and conversing with Plaintiff about it.  Only three of these entries were highlighted.  These three entries amount to one hour spent by Cleveland Terrazas attorneys analyzing the Court's decision and discussing it with their client.  The implication seems to be that Plaintiff's counsel should only have needed three hours and thirty-six minutes to discuss the order with their client.  The Court finds that, considering the length and complexity of the opinion and order, four hours and thirty-six minutes is a reasonable amount of time.  The final three entries are acceptable.

k.  PACER and Westlaw Expenses

Defendants argue, citing *Hayden*, that PACER and Westlaw research fees are not compensable. *See* Doc. 237 at 16–17. Plaintiff responds that *Hayden* is a federal case and that no such limitation on Plaintiff's attorneys' fees ought to exist. *See* Doc. 244 at 13.

As explained above, the governing law in this case is state law. There is no Alabama case that this Court could find that limits internet research in this way. Indeed, on at least one occasion, the Alabama Supreme Court has refused to limit it so. *See Perdue v. Green*, 127 So. 3d 343, 400 (Ala. 2012) (holding that, in spite of Appellant's claim that Appellees' itemized Westlaw searches included topics unrelated to the case, such search activity was reimbursable). The Court finds that expenses incurred by Plaintiff on Westlaw and PACER were reasonable.

l.   Plaintiff's Overall Number of Hours Is Reasonable

Defendants decry Plaintiff's hours spent on the litigation as excessive and unreasonable. *See* Doc. 237 at 9. This argument is borderline frivolous. Plaintiff spent a total of 2,417.65 hours litigating this complicated business dispute, which garnered him over a million dollars in compensatory damages. By contrast, Defendants claim to have spent 600 hours litigating spoliation alone. Moreover, Plaintiff's lawyers were not only seeking damages for their client; they were also engaged in a lengthy defense against Defendants' vigorously litigated multi-million-dollar counterclaim accusing Plaintiff of fraud.

**5. Concessions**

Two of Defendants' points have been explicitly conceded by Plaintiff. First, Defendants argue that the interest accrued on salary, bonuses, and the promissory note is to be calculated using simple interest and not compound interest. They argue that, in total, the interest owed to Jarvis on all payments is a sum of $184,825.24. *See* Doc. 237 at 19–20. Plaintiff concedes both that simple interest should be used and that the current owed amount is $184,825.24. *See* Doc. 244 at 13.

Second, Defendants argue that a reduction is warranted because attorney Marcus Maples included two charges that appear related to a different case. *See* Doc. 237 at 15. Plaintiff concedes that this is true and that the charges should be struck. *See* Doc. 244 at 12–13.

## DEFENDANTS' FEES

The Court awarded Defendants their fees and costs associated with addressing Plaintiff's spoliation of certain evidence. Defendants seek $179,800.78 in attorneys' fees related to spoliation. *See* Doc. 236 at 1.

Plaintiff makes two arguments for reducing the fees claimed by Defendants. First, Plaintiff argues that Defendants spent an unreasonable amount of time litigating the matter of spoliation. Second, Plaintiff enumerates entries that do not sufficiently relate to spoliation for them to be awarded to Defendants.

**1. Unreasonable Amount of Time Spent on Spoliation**

Plaintiff argues that 633 hours is an unreasonable amount of time for Defendants to have spent on spoliation. Plaintiff argues that this is facially unreasonable because the bill for these hours is nearly 30% of the total amount Plaintiff is billing for a litigation that stretched over three and a half years. *See* Doc. 236 at 2. Plaintiff argues further that the number is unreasonable given that Defendants spent no meaningful time on the issue outside of their initial motion for sanctions; they did not file a reply brief to Plaintiff's response to their motion for sanctions and they spent "less than an hour of their day-and-a-half long cross examination of Plaintiff exploring the spoliation issue." *Id.*

The Court will reduce the number of compensable hours by 20%. *See Mock v. Bell Helicopter Textron, Inc.*, 456 F. App'x 799, 802 (11th Cir. 2012)(holding that a district court had not abused its discretion where it reduced fees by 20% after finding a "significant amount of redundancy and duplication…and indivisible block billing [that left it] with a strong and abiding sense that the time and cost claimed is simply too large."). The Court acknowledges that the spoliation issue in this case was a protracted one that required the hiring of a forensic specialist and the expenditure of a great deal of time. And Defendants' expenditure of time on this issue was, in many ways, Plaintiff's own fault. As the Court explained in its memorandum opinion, Plaintiff provided shifting and inconsistent testimony about why documents were destroyed that left this issue unresolved up until, and even

after, the trial. That said, however, Plaintiff is correct that 633 hours is not a reasonable number of hours for a lawyer to spend on a single, non-dispositive discovery issue. *See* Doc. 91. *See e.g. Campos v. City of Blue Springs, Mo.*, 289 F.3d 546, 553 (8th Cir. 2002) (holding that "in our view, it should not take four experienced, highly paid attorneys 480 hours to prepare one summary judgment motion and to prepare for and conduct a four-day trial"). Six hundred and thirty-three hours is almost 16 weeks or 4 months of fulltime work: it is a facially unreasonable number of hours to spend on an issue like this. *See, e.g.*, *Keegan v. Am. Honda Motor Co, Inc.*, 2014 WL 12551213, at *25 (C.D. Cal. Jan. 21, 2014) (holding that "the legal issues simply could not have been so challenging" that class counsel needed to spend 944.6 hours on a class certification motion). The Court holds that the final fee for spoliation related activities will be reduced by 20%.

### 2.  Individual Activities in Relation to Spoliation

Plaintiff puts forth a number of examples from Defendants' list of charges and argues that they are not sufficiently related to spoliation to warrant inclusion.  The Court agrees in part.

Although block billing is permitted, an entire block may not be compensated where only spoliation work is recoverable.  Plaintiff argues that the February 21, 2019 entry should be reduced because it includes "review of spreadsheets."

Defendants agree and concede that it should be reduced by 2 hours ($599.25). *See* Doc. 245 at 2. Plaintiff argues that the block on February 27, 2019 should be reduced as the narrative contains the phrase "prepare motion for summary judgement." Doc. 232-2 at 2. Defendants agree that the February 27 entry should be reduced by 3 hours ($899). *See* Doc. 245 at 2. As the first deposition of Julia Stuart was not focused exclusively on issues of spoliation, the April 4, 2019 travel bill for her deposition will be reduced by a third ($900). *See id.* As spoliation was not the central focus of Stephanie Matlock's deposition, the May 3 and May 6, 2019 bills for defending her deposition will be reduced by half ($1,515). *Id.* at 3. The June 11, 2019 bill including time spent on the preparation of conversion claims will be reduced by a third ($620) as conversion is unrelated to spoliation. *Id.* at 6. The June 12, 2019 bill including time spent drafting a motion for summary judgment will be reduced by half ($975). *Id.* The July 29, 2019 bill that includes the drafting and filing of a motion for leave to file an amended counterclaim will be reduced by half ($640). *Id.* at 9. The January 31, 2020 bill involving the preparation of pleadings and disclosures for trial will be reduced by half ($260). *Id.* at 13. Finally, Plaintiff argues that the February 3, 2020 bill that included time spent on replies to objections to the exhibit and witness lists, as well as reviewing the expert disclosure of John Mastin, should be reduced. Defendants agree that this entry should be reduced by 8 hours ($2,399). *Id.*

In total, Defendants are due to have their original request of $179,800.78 reduced by $8,807.25 from bills that are unrelated to spoliation. The subsequent total of $170,993.53 is due to be reduced by an additional 20% ($34,198.06) to bring the charged time into line with a reasonable amount of hours expended litigating a non-dispositive discovery issue. In total, Defendants are due $136,794.93 for their time spent litigating the issue of spoliation.

## CONCLUSION

In summary, Plaintiff and Defendants are awarded offsetting attorneys' fees. Plaintiff's hours and rates are reasonable, with the exception of the rate for paralegals, which will be reduced to $100 per hour. The final number will also be reduced by $12,351.29 to account for the unreasonableness of various charges and comes to a total of $606,595.79. After offsetting the amounts owed to Defendants for activities relating to spoliation, Plaintiff is owed a total of $469,800.86 in attorneys' fees. When added to the prejudgment interest of $184,825.24, Plaintiff is owed a total of $654,626.10 in addition to other payments specified in the Court's memorandum opinion. This figure will be included in the final judgment.

**DONE** and **ORDERED** this day January 7, 2021.

_____/s/ Andrew L. Brasher_____
ANDREW L. BRASHER
UNITED STATES CIRCUIT JUDGE
(Sitting by designation)